UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRY GONZALEZ MORA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, et al.,<br>Respondent. | CASE NO. C26-2738-BAT<br>**ORDER GRANTING HABEAS PETITION AND ORDERING RELEASE** |

Petitioner Andry Gonzalez Mora is detained by Immigration and Customs Enforcement at the Northwest ICE Processing Center. He petitions the Court under 28 U.S.C. § 2241 for immediate release under the same conditions in place at the time of his re-detention, unless respondents choose to impose less restrictive conditions, and requests the Court enjoin respondents from placing an electronic GPS on his person or re-detaining him without notice and an opportunity to be heard before a neutral decisionmaker on the basis of re-detention. Dkt. 1.

Respondents argue petitioner is an arriving alien who was taken into immigration detention when he applied for admission and later released on parole and he has therefore never been "admitted" to the United States, is mandatorily detained, and is not entitled to additional process before his re-arrest. Dkt. 6 at 2. Petitioner argues respondents violated his right to due process by re-detaining him without any notice and without any hearing before a neutral

decisionmaker, and, because a post-deprivation hearing cannot serve as an adequate procedural safeguard, he is entitled to immediate release. Dkt. 1 at 4. The Court **GRANTS** the petition as follows.

**BACKGROUND**

Petitioner is a citizen of Venezuela who states he left his country after being tortured by a criminal organization and the Venezuelan police. Dkt. 1, attach. 1, Declaration of Gonzalez Mora ("Gonzalez Mora Decl.") at ¶ 1. On March 18, 2023, petitioner appeared for a scheduled CBP One appointment at a port of entry in El Paso, Texas and presented himself for admission to the United States. Gonzalez Mora Decl. at ¶ 2. At that appointment, Customs and Border Patrol held petitioner for approximately three hours, during which time CBP issued petitioner a Notice to Appear charging him as removable from the United States under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, told him he should apply for asylum within one year, and told him that he had an immigration court hearing scheduled for 2025. Gonzalez Mora Decl. at ¶ 2; Dkt. 7, Declaration of Christopher Hubbard ("Hubbard Decl.") at ¶ 4-5. Respondents contend that CBP then released petitioner into the United States, granting him parole under 8 U.S.C. § 1182(d)(5), without conditions. Gonzalez Mora Decl. at ¶ 2; Hubbard Decl. at ¶ 6.[1]

Petitioner lived in Utah from the spring of 2023 until he was detained in May 2026. Gonzaelz Mora Decl. at ¶ 2, 7-8. In August 2024, petitioner was convicted of driving under the influence. Hubbard Decl. at ¶ 7; Dkt. 8 ("Collins Decl."), ex. E. Petitioner states he served his

---

[1] The Court notes the May 20, 2026 Memorandum issued upon petitioner's re-detention states "ICE cancelled the most current of Order of Release on Recognizance (Form I-220A issued to the Alien." Dkt.8, Exhibit I. Form I-220A is the form that is used to issue what is commonly known as an OREC for Aliens subject to 8 U.S.C. § 1226, and not "parole" which is the mechanism for release for Aliens subject to § 1225.

sentence and completed additional court requirements, confirmed with his probation officer that ICE was aware of his conviction and completion of his case, and that he has no other criminal history. Gonzalez Mora Decl. at ¶ 4. Respondents state petitioner was subsequently convicted of driving without an interlock restriction (Hubbard Decl. at ¶ 10), although documents submitted by respondents appear to show this as a probation violation and not a separate conviction (Collins Decl., ex. E).

In early 2024, petitioner applied for Temporary Protected Status and an Employment Authorization Document, and his applications were approved in October of that year. Gonzalez Mora Decl. at ¶ 3; Collins Decl., ex. D. Petitioner's TPS expired in April 2025. Hubbard Decl. ¶ 9. Petitioner applied for asylum in May 2025. Gonzalez Mora Decl. at ¶ 5. In November 2025, petitioner visited the United States Citizenship and Immigration Services office in Salt Lake City, Utah to inquire about the status of his application for a new work permit; officers there informed him he needed to pay the fees for his applications but did not express any concerns regarding his conviction or his compliance with petitioner's release requirements or impose any new check-in requirements. *Id.* at ¶ 6. In May 2026, petitioner received notice a biometrics appointment for his asylum application was scheduled for the end of that month. *Id.* at ¶ 8. However, petitioner was detained before he could attend the appointment. *Id.*

On May 20, 2026, while petitioner was driving to work with a friend, a county sheriff pulled over his friend's car. *Id.* ¶ 8. Two ICE vehicles accompanied the sheriff's vehicle, and ICE officers approached and asked petitioner for identification. *Id.* The officers informed petitioner they were detaining him. *Id.* The officers did not give petitioner any written notice explaining why he was being detained or a hearing before a neutral decisionmaker to determine whether his detention was justified by flight risk or danger. *Id.*

Petitioner was eventually transferred to the NWIPC. *Id.* ¶ 9. At a hearing on his asylum application on July 9, 2026, the immigration judge denied his application and ordered him removed to Venezuela. Hubbard Decl. ¶ 18. Petitioner has appealed that denial. *Id.* ¶ 19.

**DISCUSSION**

The Court has authority to grant habeas relief if petitioner demonstrates his custody violates the Constitution, laws, or treaties of the United States under 28 U.S.C. § 2241(c)(3). Petitioner bears the burden of proving by a preponderance of the evidence his detention is contrary to law. *Parke v. Raley*, 506 U.S. 20, 31 (1992). Under 28 U.S.C. § 2241, federal courts have jurisdiction over challenges to the detention of noncitizens before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court has jurisdiction over this petition for habeas corpus, as it does not challenge petitioner's order of removal, but his detention and the process used to detain him. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019).

**I. Applicability of the Due Process Clause**

The petition and petitioner's declaration state upon his initial detention in March 2023, petitioner was released on parole under 8 U.S.C. § 1182(d)(5). Dkt. 1 at 13; Gonzalez Mora Decl. at ¶ 2. In their return, respondents state petitioner is an arriving alien mandatorily detained pursuant to 8 U.S.C. § 1225. Dkt. 6 at 2. However, respondents state both that petitioner was paroled into the United States until March 2024 and that petitioner's grant of parole lasted until March 2026. Dkt. 6 at 6, 8. Respondents also submitted evidence including a memorandum from petitioner's immigration record dated May 20, 2026, the date petitioner was re-detained, stating that the most recent Order of Release on Recognizance was cancelled on that date, and a notice of custody determination also dated May 20, 2026, stating that petitioner was being detained pursuant to section 236 of the Immigration and Nationality act, which corresponds to 8 U.S.C.

§ 1226. Dkt. 8, exs. H, I.

Respondents state despite this evidence in petitioner's immigration record, there is no indication petitioner was released on any order, conditions, or monitoring program. Dkt. 6 at 5. In his traverse, petitioner notes the inconsistent statements and the evidence referring to an OREC and detention pursuant to § 1226 and asserts the government's evidence does not establish petitioner was re-detained under § 1225. Dkt. 9 at 3.

The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, or permanent and regardless of whether detention falls under § 1225 or § 1226. *See Zadvydas*, 533 U.S. at 693; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

Even mandatory detention under § 1225 does not eliminate an immigration detainee's liberty interest. This Court and numerous others in this circuit have found such individuals have a protected liberty interest in remaining out of custody. *See, e.g.*, *N.I. v. Hermosillo*, 2026 WL 770038, at *2 (W.D. Wash. Mar. 18, 2026) ("Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest"); *Osuna Benitez v. Hermosillo*, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1025, 1032-22 (N.D. Cal. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and with no consideration of their deep financial, community, and familial ties in the country raises constitutional issues). The Court therefore finds that due process governs

petitioner's re-detention and evaluates petitioner's due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect that interest.

**II. Due process claim**

Under *Mathews*, the Court assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

First, as noted above, petitioner has considerable private interest in his freedom. His interest in not being detained "is the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Petitioner has worked and lived freely in the United States since 2023. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. That liberty interest exists regardless of ICE's initial discretion to release him on parole. *Id.* (citing *Pinchi*, 792 F. Supp. 3d at 1032); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). The first *Mathews* factor weighs in Petitioner's favor.

Second, the Court considers the risk of erroneous deprivation of petitioner's liberty interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Respondents recognize that the Supreme Court has held the Constitution normally requires some kind of hearing before the government deprives a person of liberty or

property but argue petitioner's re-detention qualifies as a "special case" where a pre-deprivation hearing is not appropriate because petitioner has never been treated as admitted to the United States. Dkt. 6 at 8. Respondents rely on *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), a case that recognized such a "special case" may exist where there is no practicable way that pre-deprivation safeguards could address the risk of erroneous deprivation because of the random and unpredictable nature of the deprivation at issue. However, courts in this district have recognized the inapplicability of *Zinermon* to situations such as this, where petitioner's re-detention was not random or unforeseeable but instead the result of the government's immigration enforcement operations. *See Espinoza Palacios,* No. 2:26-CV-491-JNW, 2026 WL 686138, at *9 (W.D. Wash., March 11, 2026); *Sarwari v. Wamsley*, No. 2:26-CV-00121-TL, 2026 WL 279968, at *5 (W.D. Wash., Feb. 3, 2026) ("There is simply nothing in *Zinermon* that could plausibly support Respondents' statement that 'Petitioner's re-detention qualifies as a special case due to his ATD violations.'"). Respondents do not explain how the fact petitioner has never been treated as admitted to the United States results in a situation where his re-detention is random and unpredictable such that there is no pre-deprivation process that is practicable or could address the risk of erroneous deprivation. This is true despite petitioner's conviction for DUI. As petitioner notes in his traverse, the Department of Homeland Security approved petitioner's TPS application in October 2024, two months after the conviction and did not re-detain him when he physically presented himself at their office in November 2025, and there is no indication that the government re-detained petitioner because of his DUI conviction. The Court finds the lack of a pre-detention hearing creates a high risk of erroneous detention, and notice and a hearing before a neutral decisionmaker would have a high probability of reducing that risk. The second *Mathews* factor weighs in favor of Petitioner.

Third, the Court must consider respondents' interest in continued civil detention. Respondents argue the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, the government has an interest in protecting immigration proceedings from unnecessary delay, and petitioner's detention fulfills the legitimate government interest in ensuring that individuals appear for their immigration proceedings. Dkt. 6 at 8-9. However, "the Government's interest in re-detaining non-citizens previously released without a hearing is low." *Ledesma Gonzalez*, No. 2:25-CV-1404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash., Oct. 7, 2025) (citing *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025)). And respondents do not elaborate on how petitioner's detention would protect immigration proceedings from unnecessary delay or ensure that petitioner appears for his immigration proceedings. Respondents do not argue ICE lawfully re-detained petitioner because of his criminal conviction, that circumstances materially changed justifying petitioner's re-detention, or that petitioner's conviction led to an individualized determination that petitioner was a danger to the community or a flight risk. Compared to petitioner's liberty interest, respondents' interest in re-detaining him without procedural safeguards is low. The third factor weighs in favor of petitioner.

The Court accordingly finds petitioner has a protected liberty interest in his release from custody under the same conditions as his expired parole agreement and that all the *Mathews* factors weigh in his favor. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139. The Court accordingly finds Petitioner shall be immediately released. *Id.* The Court also concludes a post-deprivation bond hearing is an inadequate procedural safeguard because it occurs only after detention and thus fails to address an erroneous deprivation of liberty. *See, e.g., id.*; *cf. E.A. T.-B*, 795 F. Supp. 3d at 1323-24 (citing *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)

("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Due process requires that, unless there are changed circumstances requiring mandatory detention, petitioner must be provided with notice and a hearing before a neutral decisionmaker before he can be re-detained. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139; *Pinchi*, 792 F. Supp. 3d. at 1038.

**III. Remedy**

The Court notes the specific circumstances of petitioner's re-detention drive what process is due. Thus, the Court finds if petitioner is re-detained, respondents shall provide petitioner pre-detention notice and a hearing unless detention is statutorily mandatory (which is currently not the case under the terms of his humanitarian parole). *See Chicoze-Ezechi v. Noem*, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) ("Petitioner would be subject to mandatory detention if he committed certain crimes."). The Court finds that respondents shall bear the burden to prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community at any subsequent re-detention hearing and that no conditions other than his detention would be sufficient to prevent such harms. *See Pinchi,* 792 F. Supp. 3d at 1038 (holding petitioner may not be detained unless the government demonstrates at a bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the petition for writ of habeas corpus, Dkt. 1, and **ORDERS**:

1. Respondents shall (a) **RELEASE** petitioner within 24 hours of entry of this order under the conditions of his expired parole agreement, and (b) **FILE** a status report certifying he has been released within 48 hours of entry of this order.

2. Respondents shall not re-detain petitioner or place any electronic GPS monitoring device on petitioner during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker **unless** detention is statutorily mandatory, which based on the terms of his humanitarian parole is currently not the case. At any re-detention hearing, respondents shall bear the burden to show by clear and convincing evidence that petitioner is a flight risk or a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms.

3. Upon petitioner's release, respondents must return to petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents (EADs).

4. Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 8th day of September, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge